## SCOTT COUNTY MILLING CO. v. GRAYSON.

## In re DANIEL GRAIN CO.
### No. 8240.

Circuit Court of Appeals, Fifth Circuit.
Feb. 22, 1937.

Rehearing Denied March 22, 1937.

H. P. Baya, Sr., of Tampa, Fla., and Guss Wilder, of Clearwater, Fla., for appellant.

John J. Twomey, of Tampa, Fla., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from an order of the District Court affirming an order of the referee in bankruptcy denying the petition of appellant for payment to it of certain funds in the hands of the trustee of the estate of the Daniel Grain Company, bankrupt; and sustaining the petition of said trustee for the disallowance of the claim of appellant against said estate because of an al-

leged preference under section 60 of the Bankruptcy Act, as amended (11 U.S.C.A. § 96). See, also, section 57g (U.S.C.A. § 93'(g).

Prior to July, 1934, appellant sold its various grain products to the bankrupt, but always on sight draft with bill of lading attached. The bankrupt, being without funds to pay for large quantities of merchandise but desiring to handle more of appellant's products, entered into an agreement whereby appellant was to make large shipments of grain from its mill at Sikeston, Mo., to its own order at Tampa, Fla.;, with directions to notify Mr. Carter, its representative. Carter was authorized to release these shipments to the bankrupt at invoice price, to be resold by it at its own price, an accounting to be had each week, and the bankrupt to keep the goods insured in its own name. This agreement was not reduced to writing, and there was some conflict in the testimony of appellant's witnesses as to just what was agreed upon.

Pursuant to the agreement, shipments were made, the goods delivered, and collections made weekly by Carter until about one week before March 13, 1935, when the bankrupt sustained a loss by fire. Appellant's manager, who made the agreement with the bankrupt's president, testified that under the agreement Carter was to collect each week for the merchandise taken and sold by the bankrupt. However, no record of sales or inventory of merchandise on hand was kept, either by appellant or the bankrupt. The only check or supervision made was a casual inspection by Carter, from which he was able to determine the approximate amount or quantity which the bankrupt had on hand. Payments did not bear any definite relation to the amount sold, but were dependent upon the financial condition of the bankrupt. The proceeds of the sales were deposited in the general account of the bankrupt, from which all payments were drawn. These payments were applied to the oldest invoices, without regard to the merchandise sold and remaining on hand.

The fire which occurred March 13, 1935, destroyed a part of the merchandise obtained by the bankrupt from appellant under the agreement. The funds which appellant claims in this proceeding are the proceeds of the policy of insurance carried by the bankrupt pursuant to the agreement. The preference alleged by the trustee was the return of the remainder of the merchandise after the fire loss had been agreed upon.

After the fire, the bankrupt stopped payment on the check given on account for the preceding week. Its manager and president entered into negotiations with appellant for an extension of additional credit, the investment of capital, or the purchase of the business; stating that bankrupt would not be able to continue in business on such assets as it then had. While these negotiations were pending, the bankrupt's manager fraudulently obtained possession of a shipment of appellant's merchandise, stored it in a bonded warehouse, and pledged the warehouse receipts for a loan. After this shipment was recovered, appellant broke off negotiations repossessed the merchandise remaining in the bankrupt's possession, and procured an assignment of the portion of the proceeds of the insurance represented by its products destroyed.

■ The contention of appellant, that its products were delivered to the bankrupt on a consignment basis without title passing as against other creditors, is untenable. The series of transactions must be considered not only in the light of what the agreement provided, but what was actually done pursuant to it. Taylor v. Fram (C.C.A.) 252 F. 465. It does not appear that the bankrupt was bound by the agreement, or expected, to keep separate and account for the proceeds of sales made by it. Such proceeds were not treated as trust funds. Nothing in the record evinces any intention of the parties that appellant be permitted to repossess the merchandise. The whole course of dealings indicates that each delivery was a sale on very limited and closely supervised credit. In re Heckathorn (D.C.) 144 F. 499; Pontiac Buggy Co. v. Skinner (D.C.) 158 F. 858; Flanders Motor Co. v. Reed (C.C.A.) 220 F. 642; Ramey Milburn Co. v. Eaves (C.C.A.) 283 F. 776; In re United States Electrical Supply Co. (D.C.) 2 F.(2d) 378; Reliance Shoe Co. v. Manly (C.C.A.) 25 F. (2d) 381; Samson Tire & Rubber Co. v. Eggleston (C.C.A.) 45 F.(2d) 502. This being true, title to the property destroyed by fire was vested in the bankrupt, and appellant's petition for payment of the funds to it was properly denied.

■ By virtue of the foregoing conclusion, the only question to be determined on the contest to the claim is whether or not appellant or its agent had reasonable

cause to believe, or did believe, that the transfer of its products remaining on hand after the fire would constitute a preference. However, the course of the dealings between the parties, the circumstances under which the agreement was made, the loss by fire, the lack of funds to meet the outstanding check at the time of the fire, the efforts of the bankrupt's manager to sell or refinance, and his desperate effort to obtain further cash, seem to preclude this question. If appellant did not have actual notice, it could not shut its eyes to a fact so obvious from the information it had. McElvain v. Hardesty (C.C.A.) 169 F. 31, 36; Coleman v. Decatur Egg Case Co. (C.C.A.) 186 F. 136; Watchmaker v. Barnes (C.C.A.) 259 F. 783; Williams v. Plattner (D.C.) 46 F. (2d) 467. The judgment of the District Court is affirmed.