46 So.2d 481 (1950)
ATLANTIC COAST LINE R. CO.
v.
PRICE et al.
Supreme Court of Florida, en Banc.
May 26, 1950.
*482 W.P. Allen, Bartow, and LeRoy Allen, Tampa, for appellant.
Carver & Langston, Lakeland, for appellees.
THOMAS, Justice.
This litigation grew out of a collision on a grade crossing between a Diesel locomotive, to which no cars were attached, operated by appellant and an automobile driven by A.E. Price, who was accompanied by his wife, his son, and his daughter. Each sued, and the four cases were consolidated for trial.
The jury returned the verdict:
"We, the jury, find for the plaintiffs and assess their damages as follows:

 For A.E. Price $0000
 For Olive Price $1250.00
 For Margery Price $ 300.00
 For Tommy Price $ 150.00

"So say we all."
Motions for new trial were filed by the defendant, the railroad company, in the cases of Olive, Margery, and Tommy Price, and by the plaintiff, A.E. Price. The motion in the case of Olive Price was granted, as was the motion of A.E. Price, but the other motions were denied. No appeal was taken from the order granting the motion in the case of Olive Price versus the railroad company; so that controversy will not be further mentioned, and we have for review the order granting the motion of A.E. Price and the judgments entered for Margery Price and Tommy Price.
We shall first dispose of the challenge to the court's granting the motion of A.E. Price. The judge instructed the jury that if they should find for the defendant they should report: "`We, the Jury, find the defendant not guilty,'" and if they should decide for the plaintiffs they should say: "`We, the Jury, find for the plaintiffs and we assess their damages as follows: For *483 A.E. Price, dollars blank. Fill in the amount. For Olive Price, dollars blank. Fill in the amount. For Marjorie [sic] Price, dollars blank, and fill in the amount. For Tommy Price, dollars blank, and fill in the amount. Then he told them to "take these two verdicts with you and when you have reached a verdict, bring them in." We have italicized the word "two" in view of the comment of the judge in his order granting a new trial that "the form of verdict prepared by the Court and submitted to the Jury was evidently misleading so far as this plaintiff [A.E. Price] was concerned or the case was not understood by the Jury * * * because the Jury returned an improper verdict to the effect that [he] was entitled to recover but the amount of the recovery was nothing." (Emphasis ours.)
What happened is perfectly clear and understandable. The court prepared and handed to the jury two forms of verdicts, one to be used if they found for the plaintiffs and another to be used if they found for the defendant. It did not occur to anyone that in a suit by four occupants of the same car, all members of the same family, alleged to have been injured in the collision, the jury might not return a verdict common to all plaintiffs. When they arrived at the conclusion that three plaintiffs should prevail and the fourth should not, they used the form of verdict that seemed more appropriate, and simply wrote zeros opposite the name of the losing plaintiff, A.E. Price. This seems to us very natural.
We offer no criticism of the judge's furnishing the forms that he did or receiving the one eventually used by the jury; however, we do not agree that they were misled or that confusion resulted. We are convinced that the jury intended to allow this particular plaintiff nothing at all and that the words in the formal part of the verdict, "find for the plaintiffs," became, so far as he was concerned, mere surplusage and did not counteract what they themselves inserted, that is, the naughts which indicated that he should not recover.
Although the form of the verdict was imperfect when the jury made it apply where there was a finding against one plaintiff and for the others, still we think their intent was plain, and this, after all, is the test. No objection was made at the time the verdict was presented, and we understand it did not occur to court or counsel that there was any irregularity until after the jury had dispersed. In such circumstances, exception to the form was waived. General Motors Acceptance Corporation v. Judge of Circuit Court, 102 Fla. 924, 136 So. 621.
So the order granting the motion of A.E. Price for new trial is reversed.
We now take up the appeals from the final judgments entered in behalf of Margery Price and Tommy Price against the railroad company. The pivotal question is the sufficiency of the evidence to support these judgments, and we shall give a resume of it in a light more favorable to these appellees.
From the testimony of the plaintiffs and their witnesses we learn that A.E. Price and his family were driving in Lakeland on Ingraham Avenue, which is crossed by a single track of the appellant, running in a northwesterly-southeasterly direction. As the party had driven toward the city they had seen a train approaching from the southeast, and when the crossing was reached, the train was distant about six hundred feet to the right, evidently stopped, while the engine involved in the collision was drawing near from the opposite direction. When the car was "on the track," to quote the appellee, Margery Price, she yelled a warning of the engine to the left, and evidently this was the first time any one in the car was aware of its presence. The father looked to the right and saw he "had plenty of time on that train"; then he "wheeled and looked to the left again in time to take the door glass out on [his] face * * *." It is obvious from the testimony offered in behalf of the plaintiffs that such of the parties as were looking at all were watching the train to their right and heedless of the engine to the left.
*484 The driver of the car, A.E. Price, was not operating in strange territory because he said he had used the crossing on numerous occasions. The testimony clearly indicates that from an area within which the car could have been easily stopped to allow the passage of the locomotive one could see for a considerable distance along the track in either direction. The collision occurred on a clear, cool night. It is very significant that the temperature was so low that all windows in the car were closed. When the impact came, the car was struck on the left-hand side near the driver's seat and was "shoved or pushed" a distance of approximately twenty feet.
This is the picture of the occurrence that may be formed by a study of the testimony of the occupants of the car themselves and, we think, is a clear one of a mishap chargeable to the carelessness of the operator of the car. There was ample reason to look to the right for the train which had been seen coming toward Lakeland, but certainly there was no excuse to make no effort whatever to determine before going upon the track whether a train was coming from the other direction.
The place on the car where the engine struck it establishes that the vehicle was completely on the track, and the testimony of the appellee, the operator's daughter, is that it was in that approximate position when she, obviously the first of the group to notice the locomotive, called a warning to her father.
What degree of negligence the jury may have attributed to the driver, A.E. Price, we cannot know. They may have concluded that his carelessness was solely responsible for his injury or, if we take into consideration their finding for the other occupants of the car, it may be that they felt his negligence and the company's neutralized each other, while the defendant was responsible to them for the degree of negligence chargeable to it. But it does not seem necessary to speculate on how they may have weighed the negligence of the driver against any negligence of the company, in view of the latter's evidence.
By the engineer, seasoned by twenty-nine years in that capacity, four years as an operator of a Deisel locomotive, the conductor, the switchman, and the fireman it was established without equivocation that the bright light on the Diesel engine was burning, the crossing signal had been sounded on the air horn, and the bell was ringing and had been for some time. The engine, so it was testified by the engineer, was traveling at a speed of about twelve or fifteen miles an hour, and this is buttressed by the established distance the car was "pushed or shoved." The appellees are inclined to chide the appellant because the stories of the train crew are in accord about all precautions having been taken to insure a safe passage of the engine across the highway, but it takes more than that or the testimony which we shall presently digest, supposed to contradict their versions, to neutralize them. Certainly by this testimony any presumption of negligence, Section 768.05, Florida Statutes, 1941, and F.S.A., was dispelled.
As we have said, the windows in the car were closed, which, of course, would have impaired the hearing of any one traveling in it. Then, all the testimony of the plaintiffs with reference to the warning signals is of a weak variety. We do not read that any of them said that the signals were not given, that the locomotive was not traveling at a reasonable speed or was traveling at a stated speed which would appear to be unreasonable, or that the light was not shining brightly. Actually the driver said from the witness stand: "I never did sec the engine, I never did see the light of the engine until I got out of that automobile * * *." They asserted nothing about the speed of the engine, and simply stated, so far as the light, the bell, and the horn were concerned, that they did not see and they did not hear. That is not enough, as we said in Powell v. Gary, 146 Fla. 334, 200 So. 854. After the appellant had introduced its testimony, the appellees offered nothing to rebut what we have related.
We can only conclude, considering the circumstances surrounding this occurrence, the state of the weather, and the physical conditions, the accounts of the opposing *485 parties that blend, and the insufficiently rebutted testimony of the appellant about the precautions taken by its crew that A.E. Price brought about the injury to himself and his family through his own neglect to beware an approaching engine when he drove on the track, and that the appellant was in no wise to blame for what happened.
The judgments are 
Reversed.
TERRELL, CHAPMAN, SEBRING and HOBSON, JJ., concur.
ADAMS, C.J., and ROBERTS, J., dissent.